No. 3878

**Second Circuit**

———

**HUFFMAN ET AL. v. HARMAN**

———

(April 9, 1931. Opinion and Decree.)

———

Cecil Morgan, of Shreveport, attorney for plaintiffs, appellants.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellee.

DREW, J. This suit arises out of an automobile collision which occurred at the intersection of two streets in the city of Shreveport. Plaintiffs alleged that Mrs. Dorothy C. Huffman, one of plaintiffs, was driving a Ford sedan proceeding north on Gilbert street on the right-hand side and at a moderate rate of speed. That as she entered the intersection of Gilbert and East College streets, defendant's Chevrolet truck, driven by a negro, an employee of defendant, coming from the west on East College, ran into her Ford sedan broadside. Plaintiffs alleged that the driver of the truck was acting within the scope of his employment and was on a mission for defendant. They further alleged that the truck was being operated in a careless, reckless and negligent manner; that it was being operated at an excessive rate of speed, approximating thirty-five miles per hour; that the driver of the truck failed to slow down for the intersection and failed to recognize the right of way and to permit the car of plaintiffs to' pass on Gilbert street, it being a right of way street; that the truck driver failed to apply his brakes in an attempt to avoid the accident; and that defendant's truck entered the intersection after plaintiffs' car had entered and acquired the right of way. That the truck driver's negligence was the proximate cause of the accident and the resulting injury and damage to plaintiffs, alleged to be in the amount of $947.68, for which sum they pray for judgment.

Defendant denied the principal allegations of plaintiffs' petition and alleged that his truck was being driven north on Gilbert street at the time of the accident, and that plaintiffs' car was going west on East College street. He denied that the truck was traveling at an excessive rate of speed, and alleged that it was not exceeding 23 miles per hour. He alleged that plaintiffs' car was traveling at a fast, reckless and dangerous rate of speed and did not slow down at the entrance to said intersection. That the driver of plaintiffs' car did not look to see if another car was approaching on Gilbert street, and that his truck entered the intersection first. That on seeing the car of plaintiffs, his driver applied the brakes. He prays for plaintiffs' demands to be rejected and for his right to sue for damages to his truck to be reserved.

There was judgment in the lower court rejecting plaintiffs' demands, and they have prosecuted this appeal.

It is rather unusual that plaintiffs and defendant should both claim to have been on the same street. Plaintiffs contend that their car was at the time of the accident going north on Gilbert street and that defendant's truck was going east on East College; and defendant contends that his truck was going north on Gilbert street and plaintiffs' car was going west on East College street. The pleadings on this point are entirely irreconcilable and the evidence thereon is likewise so. Both plaintiffs and defendant base their hopes of success in this case on the question of which car was on Gilbert street, and say to this court that to decide that question is to decide the case. We presume they took the same position in the lower court and that the judge below held that the plaintiffs had not overcome the burden of

proving their case with a preponderance of evidence. If that be true, we can find no fault with the judgment.

Mrs. Huffman, who was driving plaintiffs' car, testified that she was going north on Gilbert street. She is corroborated by one witness who testified that he saw her for a block before she entered the intersection, and one witness who saw the accident at the moment it happened. The driver of the truck and his companion, who was riding with him, testified that they were going north on Gilbert and are corroborated fully by a lady who lives on the corner of East College, who testified that she saw the truck going north on Gilbert for more than a block away and that she saw plaintiffs' car coming west on East College. Both plaintiffs and defendant argue that the physical facts corroborate their positions. But the testimony as to the position of the two cars after the accident and the tire marks on the pavement is just as much in conflict. Immediately after the accident, plaintiffs' car was up against the curb on the north side of East College, facing west, and the truck was headed into its left side. This position of the cars corroborates either the contention of plaintiffs or defendant, however, possibly more favorable to plaintiffs' theory. But the testimony of several disinterested witnesses who viewed the scene soon after the accident is that the heavier tire tracks of the truck were on Gilbert street and the tire tracks of plaintiffs' car were on East College, a physical fact strongly corroborative of defendant's contention. This question as to which one was on Gilbert street is purely a question of fact, and the record does not disclose any error in the finding of the lower court thereon. The evidence does not make it clear as to which car entered the intersection first—the only way to arrive at that would be to know positively which street each was on. The positive testimony is that neither car was traveling over 20 to 25 miles per hour and that neither street is a right of way street. It is also clear that neither driver saw the other until the moment of the collision, as neither looked to the right or left.

We think the testimony shows that had either driver looked on or before entering the intersection, that one could have seen the other for at least 50 feet before entering the intersection, and could have avoided the accident. If they could not see before entering the intersection, it was then the duty of both to slow down and put their cars under control so as to be able to stop in an emergency. Although defendant's driver was negligent in not seeing plaintiffs' car before entering the intersection, we think plaintiffs were equally as guilty of negligence in not seeing defendant's truck before entering the intersection. And had plaintiffs exercised the precaution required by law, the accident would have been avoided. Therefore, regardless of which street plaintiffs' car was on, they cannot recover.

We find no error in the decision of the lower court and it is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with all costs.

———

McGREGOR, J. (dissenting). Plaintiffs sued defendant for the sum of $947.68, alleged to have been the result of an intersectional collision in the city of Shreveport, between a Ford sedan and a Chevrolet milk truck. The sedan was owned by the plaintiffs and was being driven by

one of them, Mrs. Dorothy C. Huffman, who was alone at the time. The truck was owned by the defendant and was being operated by a negro employee in the regular course of employment. The scene of the collision was at the intersection of Gilbert and East College streets, in what is known as the Highland section of the city of Shreveport. Gilbert street runs north from the Gladstone section towards town until it runs into and merges with Marshall street, near the Highland Sanitarium. It is midway between and runs parallel with Highland avenue and Centenary boulevard. East College street runs east and west and intersects Highland, Gilbert and Centenary boulevard at right angles.

In the petition it is alleged that the plaintiff, Mrs. Dorothy C. Huffman was proceeding north on Gilbert street on the right-hand side at a moderate rate of speed and that as she entered the intersection of Gilbert and East College, still going straight north, the defendant's Chevrolet truck, coming from the west on East College street, struck her Ford sedan broadside, near the middle. It is further alleged that the Chevrolet truck was being operated by the defendant's employee in a careless, reckless and negligent manner and at an excessive rate of speed. The defendant in his answer denied any and all negligence on the part of his employee and alleged an entirely different state of facts. He alleged that, instead of traveling east on East College street at the time of the collision, the Chevrolet truck was going north on Gilbert street, where the plaintiff claims that she was, and he further alleges that, instead of traveling north on Gilbert street at the time of the collision, the plaintiff, Mrs. Dorothy C. Huffman, was on East College street, go-ing west, approaching the intersection of Gilbert. There are witnesses testifying to both sets of facts. The trial judge evidently held that the plaintiffs carried the burden of proving their contentions and that they had failed owing to the many conflicting statements found in the record. He therefore refused the plaintiffs' demands and rendered judgment in favor of the defendant.

Able counsel for the defendant very aptly and correctly said in their brief that "when testimony is contradictory, it is the duty of the court to reconcile it, if possible." They further state that, "If it is found by the court that the testimony cannot be reconciled, then, the 'preponderance of the evidence' will determine the findings." This, too, is a correct statement of the rule of interpretation of testimony and evidence, but it is also true that the courts accept some testimony as true and reject other as untrue. They believe some and disbelieve some. There are no hard and fast rules to control the courts in discovering the truth when the evidence is conflicting and cannot be reconciled. It is often true that because of undisputed physical facts the doctrine of res ipsa loquitur is resorted to in order to determine the correct finding. So in this case it seems to me that the undisputed physical facts determine in a large measure the correctness or incorrectness of the contentions of the plaintiffs and the defendant. The plaintiff, Mrs. Dorothy C. Huffman, was either going north on Gilbert or west on East College; she could not have been in both positions. The defendant's employee was going either east on East College street or north on Gilbert; he could not have been in both positions. In arriving at a determination of the issue involved I start with undisputed phy-

sical facts and will endeavor to ascertain from these facts from what directions the two vehicles came and who was to blame. Immediately after the collision when both had come to a standstill, plaintiffs' Ford sedan was on the north side of East College street up against the curb facing Gilbert street on the west, several feet east of the east edge of Gilbert street, estimated by witnesses on both sides to be from five to twenty-four feet. Defendant's truck struck the plaintiffs' sedan broadside at about the middle, and the front of the truck was driven into and locked in the side of the sedan. Imprints of both headlights of the truck were found on the left side of the sedan, so there can be no mistake about the truck striking the sedan broadside and midway.

Repairs to the amount of $197.68 had to be made to the sedan on account of the collision. Included among these repairs were a door, body panel, frame, clutch housing, fly wheel housing, motor supports, running board and attachments, left rear fender, left front fender, one rear wheel, one battery and numerous other parts. We enumerate these items to show in a measure the intensity of the blow from the truck to the sedan.

We come now to the question as to how and where the collision occurred. Mrs. Huffman, the lady who was alone in the sedan and driving it, states positively that she was traveling north on Gilbert street and had entered about half way the intersection with East College when the defendant's truck, coming from the west on East College, suddenly struck her at about the middle of East College street. She states that as she was approaching the intersection with East College street she did not see the defendant's truck, so it is evident that it was not entering the intersection at the time that she was. Whatever the real positions of the two vehicles at the moment of the collision was, it is conceded that the truck fastened itself upon the middle of the side of the sedan. That being true, it followed the sedan to the position into which it pushed it. It is undisputed that there were sliding marks on the pavement in East College street, running in the form of arcs from the front and rear wheels of the sedan out into Gilbert street, which clearly shows that the sedan was in Gilbert street when it was struck and that it was forced by the truck into the position in which it finally rested on College street. Furthermore, it is admitted by the defendant that it was at least partly in Gilbert street at the time of the collision. Those sliding marks show that the entire car was over in Gilbert in some position. At the moment of the collision both vehicles must have been moving and must have had some momentum. The direction which the two vehicles took as they were locked together depended very largely on the momentum of each. It is not reasonable to suppose that either would entirely overcome the momentum of the other and carry it in directly the opposite direction from where it was going just before the collision. And yet, that is what would have taken place if we believed the defendant's version. Defendant alleges that his truck was traveling directly north on Gilbert street and that plaintiffs' sedan was traveling due west on East College and had run into Gilbert in front of the truck in time to receive the blow. The sedan was thus completely stopped, its momentum entirely overcome and it was pushed back east on East College a distance, according to all the testimony, of

from ten to thirty feet, and brought to a standstill up against the north curb of East College street with the sedan facing west. If this collision had occurred as contended by the defendant, it is certain under the laws of physics that the two vehicles would have traveled in a northwest direction and the wreck would more than likely have landed on the west curb of Gilbert street. Under the laws of physics even if the plaintiffs' car had been at a perfect standstill it would have been practically impossible for defendant's truck running north at any rate of speed on the right side of Gilbert street to collide in any manner with this sedan so as to drive it east up East College street a distance of ten to thirty feet until it locked itself in the side of the sedan and stopped, with the sedan up against the north curb of East College in a demolished condition. I say this could not be done if the truck had been going at an enormous rate of speed, while the sedan was standing still, and much less could it have been done when the truck was traveling at a slow rate of speed in the first instance, as defendant claims, and had then had the brakes applied, and while the Ford sedan was traveling at least at a moderate rate of speed west. Taking it for granted for the sake of argument that the defendant's contention is correct as to the relative streets and directions on and in which the respective vehicles were traveling, the Ford sedan could not have been going at a rapid rate of speed west, for it it had it is certain that it could not have been forced backwards east into East College street, but with its momentum it would have either continued on across Gilbert street or north on Gilbert because of the collision. Again, if defendant's truck had been going north as is contended, at a slow rate of speed, it is sure that it would

have been carried west instead of east by the force of the collision.

Under the doctrine of res ipsa loquitur we are bound to hold that the defendant's truck could not have been going north on Gilbert while the plaintiffs' sedan was going west on East College.

Take it on the other hand, plaintiffs allege that the sedan was proceeding north on Gilbert at a reasonable rate of speed and that the truck was traveling east on East College. We think two moving bodies traveling one east and the other north the resultant direction of the two positions coming together under the laws of physics would be northeast. Plaintiff, Mrs. Huffman, says defendant's truck struck her on the left side just as she was reaching the center of the intersection. The natural thing under that situation would be for the truck, the larger of the two vehicles, to drive the sedan toward the east and that is just what happened in this instance. It is certain that it struck it nearer the rear end somewhat, for it swung the rear end around until the sedan landed against the north curb of East College street. This is plainly shown by the sliding marks in the shape of arcs which extended from the rear and front wheels of the Ford sedan into Gilbert street. With the truck coming east it could drive the sedan into East College, as was admittedly done, but this was physically impossible with the truck going north and the sedan going west. The physical facts, therefore, bear out the contention of the plaintiffs and corroborate their witnesses. The conclusion is irresistible that defendant's truck was driving at a high rate of speed toward the east on East College street when it struck the plaintiffs' sedan as it was going north on Gilbert street.

Plaintiff herself certainly knows in what direction she was going and on what street she was traveling and she swears that she was going north on Gilbert and that the truck struck her on the left side, coming from the west. But the defendant will say just as positively that this truck driver knew that he was traveling north on Gilbert street and that the plaintiffs' sedan was traveling west on East College. In a case like this the court has a right to believe one and to disbelieve the other and so I unhesitatingly say I believe the lady is telling the truth. On this point it is contended by counsel for the defendant that the lady was confused and honestly did not know or remember in what direction she was going or on what street she was traveling, and in support of this contention they cite the fact that during her cross-examination by them she testified as follows:

"Q. Were you to some extent dazed and confused at the time of the accident, Mrs. Huffman?

"A. I was, immediately following the accident.

"Q. That is what I meant. And did not you on that occasion give different statements to bystanders as to the direction in which you were going and the street that you were on? Did you not tell some people immediately, at the time of the accident, that you were going west on College?

"A. I told the officer when he came, I was still in the Ford and didn't get out until after he arrived—he asked me where was I going and I told him he could see for himself, I hadn't moved. He said, 'You are on East College,' I said, 'No, I am on Gilbert.' I thought I was. I got out, got the directions and straightened myself out and I told him that I was driving on Gilbert.

"Q. That is all."

Instead of being against the lady's tes-

timony that she was traveling north on Gilbert street, I think this extract from her testimony confirms her position. In her dazed condition she still thought she was on Gilbert street where she knew she was just prior to the collision. Her statement at this time in her condition has great probative force as a part of res gestae.

There were two disinterested eyewitnesses, Mr. and Mrs. C. C. Hankins, who were on their way home from Sunday school. At this point it is well to mention the fact that this collision took place on Sunday at about 11 o'clock, and that Mrs. Huffman lives at Centenary College and that she had been home to take her children who had attended Sunday school that morning at St. Mark's Episcopal Church, and that she was at the moment of the collision on her way back to church. Mr. and Mrs. Hankins, as just stated, were on their way home from Sunday school. They were in an automobile traveling south on Gilbert street about one block north of the intersection with East College. Mr. Hankins testifies that he saw plaintiffs' sedan coming north on Gilbert and when the collision took place he saw the truck coming from the west on East College and was looking directly at them when the collision took place. At the moment of the collision they were about one-half a block north of the intersection on Gilbert street. Mrs. Hankins never remembered seeing the sedan and in what direction it was traveling before the collision, but she says that just before the collision the sedan was on the east side of Gilbert, facing north and that the truck was facing east on East College street. In discussing the testimony of these two witnesses in their brief I think that counsel for defendant have misread it and

have not given it the force to which it is entitled.

On the other hand, defendant's driver, a passenger who was riding with him and a lady who lives on the northwest intersection of these two streets all swear positively that the truck was going north on Gilbert and that the sedan was going west on East College. I do not believe that the two negroes even thought that they were telling the truth. I do think that the lady who lives at the intersection thought she saw it as she testified, but her testimony is inconsistent with the physical surroundings and I think she could not have seen all that she thinks she saw and as she thinks she saw it. She says that she was standing at the top of a step ladder, inside of her residence, hanging curtains on Sunday morning, and that she was looking down Gilbert street and saw the truck proceeding all the way from Boulevard street until it reached the intersection with East College and the thought occurred to her that there was one truck that was traveling slowly. She testified further that she heard the truck put on its brakes and that it made a terrible sound. This within itself would be inconsistent with the fact that the truck was traveling at a slow rate of speed. If it had been traveling at such a slow rate of speed and the driver had put on the brakes as she claims, it would have been impossible for the collision to have taken place, as it did and it would have been still more impossible for the truck to drive the sedan east on East College street as it did.

Counsel for defendant in their brief invite us to consider "the inherent probability that Mrs. Huffman was driving west on East College street on this Sunday morning." They suggest that it is proper to consider these probabilities owing to the conflicting statements of the various witnesses. I think they are right in this, but with my knowledge of the city I believe that if they stake their case on the probability of Mrs. Huffman's proceeding north on Centenary boulevard and turning west on East College street, it would be impossible to reach a conclusion in favor of the defendant. Counsel are very ingenious in their argument as to why Mrs. Huffman would naturally select the route of East College in order to go quickly from Centenary College to St. Mark's Episcopal Church. They say she came down Centenary boulevard to East College street in order to drive west about a mile on a street that usually had very little traffic on it. It will be admitted for the sake of argument that the lady was in a hurry. Under this condition she certainly would select the most direct and easy route, but to take the route suggested by counsel Centenary boulevard would immediately carry her at least one-half a block east out of her way, and then, as soon as she had turned north again on Centenary boulevard she would have reached East College in about six or eight blocks. It is interesting to know that East College intersects Centenary boulevard at a point half way down a hill. If the lady were driving on Centenary boulevard she would certainly have had a considerable speed at that point and it would have been impractical to turn west on East College street there and, furthermore, as soon as she had turned into East College she would have immediately had another hill to climb. These two reasons, I think, argue most strongly against the probability of her selecting this route. On the other hand, there is a street that leads directly from Centenary campus to Gilbert

street and it is more likely and probable that she took this route and as soon as she reached Gilbert, turned north on it, as it is commonly known as a right-of-way street. In their argument counsel urge that Mrs. Huffman would have avoided Gilbert street for the reason that it is a main artery and in the same breath they urge that defendant's negro driver would have selected it for the same reason. Considering the probabilities of the course that the negro truck driver would take, it is necessary to state what his mission was on this Sunday morning. He had gone from Bossier City to a dairy located on Samford avenue and Dalzell street. From there he went to the defendant's residence at the corner of Kings Highway, Fairfield and St. Vincent's avenues. From there he went to Preslar's Milk Station on Highland avenue. From Preslar's Milk Station he was due to return to Bossier City. Counsel contend that he turned off Highland avenue to reach Gilbert, the next street but one after he left Preslar's Milk Station. Counsel is mistaken in this, for Dalzell street is the sixth street from Preslar's Milk Station. It is the more reasonable supposition that defendant's truck driver had in mind to reach Centenary boulevard and that he selected a street that would go all the way from Highland avenue to Centenary boulevard. After he reached Centenary boulevard he would have no more turns as that street goes directly into the city over Market street viaduct and would take him within two blocks of the Red River bridge, where he was going. We think, therefore, defendant's truck driver turned off Highland avenue on a street leading directly to Centenary boulevard. This is the most logical conclusion that can be reached when we consider the point from which the driver was going and the place to which he was traveling. This being true, and since the collision took place at the intersection of East College and Gilbert streets, the irresistible conclusion as I see it, is that he turned off Highland avenue on East College and was traveling east on East College when he ran into and struck the plaintiffs' sedan, and that therefore the plaintiffs' sedan must have been going north on Gilbert street as Mrs. Huffman contends she was. Counsel argue that the negro got off Highland avenue in order to avoid the street car tracks and sought Gilbert. The truth is Gilbert would soon take him back to these same street car tracks. In traveling all the way from Highland avenue to Centenary boulevard, the driver would not only avoid the street car tracks, but would reach a direct route to his destination.

Counsel on both sides appear to have agreed among themselves to stake the entire issue on the question as to who was going north on Gilbert street. If the question should turn on that issue alone judgment would have to be rendered for the plaintiffs, but I think that there are other reasons for reaching the same conclusion.

Quite a number of witnesses were produced by the defendant other than those mentioned above but none of these saw the collision. All testified to physical facts and my conclusion that the collision undoubtedly occurred while the sedan was going north on Gilbert and the truck was going east on East College street is based as much on their testimony as it is on the testimony of the plaintiffs' witnesses who testified as to the physical indications immediately after the collision.

Having found the facts to be as stated,

namely, that the collision occurred while the sedan was going north on Gilbert street and the truck was going east on East College street, it remains to determine whether the defendant's employee was guilty of negligence. The testimony convinces us that Mrs. Huffman, the plaintiff who was driving the sedan, had the right of way when she entered the intersection and that the driver of the truck while traveling at a reckless rate of speed ran into and struck the sedan and forced it several feet east on East College street. The fact that he forced or drove the sedan as far as he did into East College street and the way he did it convinces me thoroughly that he was negligent and that he was driving at a reckless rate of speed and that his truck had acquired an enormous momentum. And since it is admitted that he was in the regular course of his employment at the time, his employer, the defendant herein, is liable.

The opinion of the majority is based on the holding that the plaintiff, Mrs. Huffman, was guilty of negligence in not seeing the defendant's truck as she approached and entered the intersection. I cannot agree with this holding of the court. Mrs. Huffman testifies positively and definitely that, "He was not within my line of vision when I entered the intersection." She testifies that she was driving at a rate of about 18 miles per hour at the moment of collision. Mrs. Huffman, under the law, was not required to see the defendant's truck at just any point he might be in the block to her left on the west. She looked at the instant she entered the intersection and he was not in her "line of vision." She was safe to enter the intersection if no other vehicle had entered from her left on the west, but by the time she got half way across she was struck a heavy, broadside blow from the left, which turned her around at right angles and forced her sedan from ten to thirty feet east into College street up against the north curb. In order for this to happen plaintiff is bound to have been going slowly and defendant's truck is bound to have been going at such a terrific rate of speed that he could not have been entering the intersection simultaneously with the plaintiffs' sedan. With the truck traveling at the rate of speed it was and with such momentum as to cause the damage it did in the way it did, it must have been such a distance west of the intersection that it was not in the line of Mrs. Huffman's vision when she entered the intersection. So, Mrs. Huffman's direct testimony convinces me that she did look and did not see the defendant's truck. It no doubt was several feet west of the intersection at the moment. The way in which defendant's truck forced the car east from ten to thirty feet convinces me of the gross negligence of the driver of the truck.

I am so firmly convinced that the defendant's truck driver was guilty of negligence and that the plaintiff, Mrs. Huffman, exercised all the care and caution required by law, that I respectfully dissent from the opinion handed down by the majority of the court.